1
2
3
4               UNITED STATES DISTRICT COURT
5              NORTHERN DISTRICT OF CALIFORNIA
6

KAIA FOODS, INC.,                    Case No.  14-cv-01708-JCS
7
            Plaintiff,
8
      v.                             **ORDER GRANTING DEFENDANT'S
9                                    MOTION TO TRANSFER OR DISMISS**
   T.J. BELLAFIORE,
10                                   Re: Docket No. 14
            Defendant.
11

12

13   **I.      INTRODUCTION**

14           Defendant T.J. Bellafiore, an individual, brings a Motion to Dismiss for Lack of Venue, or,

15   in the Alternative, to Transfer Venue ("Motion") in this trademark infringement action, asserting

16   that venue in this District is improper and that the action should have been brought in the Central

17   District of California.  The parties have consented to the jurisdiction of the undersigned United

18   States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Motion

19   is GRANTED and the action is transferred to the Central District of California.

20   **II.     BACKGROUND**

21           **A.      Complaint**

22           Plaintiff Kaia Foods, Inc. ("Kaia") is based in Oakland, California.  Complaint ¶ 4.  Kaia

23   and its predecessor-in-interest, Alive & Radiant Foods, "produce and sell healthy, organic snacks,

24   including air-dried, organic vegetable chips."  *Id*. ¶ 6.  Plaintiff contends it holds a common-law

25   trademark for KALE IN A KRUNCH and KALE KRUNCH, which it refers to collectively as the

26   "KALE KRUNCH trademark."  Plaintiff's  Opposition to Defendant's Motion to Dismiss

27   ("Opposition") at 2.  In particular, Plaintiff alleges in the Complaint that "[a]s early as April 2008,

28   Plaintiff's predecessor-in-interest launched an air-dried organic kale chip product, which it

United States District Court
Northern District of California

1    marketed under the KALE IN A KRUNCH trademark."  Complaint  ¶ 7.  Plaintiff further alleges

2    that "[c]urrently, Kale Krunch is available for purchase throughout the United States at numerous

3    health food stores, as well as online at Plaintiff's website and other third-party websites, such as

4    Amazon.com."  Id. ¶ 8.

5         According to Plaintiff, Defendant Bellafiore has knowingly and in bad faith infringed

6    Kaia's trademark.  In support of its allegation that Defendant was aware of Kaia's mark, Kaia

7    alleges that "[o]n November 7, 2008, Defendant placed an order for Plaintiff's "Kale in a Krunch"

8    chips via Plaintiff's website; the name on the order was T.J. Bellafiore and included a

9    corresponding email address."  Id ¶ 9.  Kai further alleges that Defendant registered the domain

10   name "kaleinyourkitchen.com" on December 4, 2010 and the domain name "Kale.krunch.com" on

11   March 18, 2011.  Id. ¶¶ 10-11.  As of March 19, 2011, the Whois record for the latter domain

12   name allegedly listed a mailing address in Culver City, California.  Id. ¶ 11.

13        Kaia alleges that on April 15, 2011, Defendant filed a federal trademark application with

14   the United States Patent and Trademark Office ("USPTO") for "KALE KRUNCH" in which

15   Defendant claimed that the mark was "in use" and that the date of first use in commerce was April

16   15, 2011.  Id. ¶ 13.  The trademark allegedly was registered on October 22, 2013 with Registration

17   No. 4422321 and the registration lists the owner as T.J. Bellafiore, dba Kale in Your Kitchen,

18   located in Culver City, California.  Id.  Kaia alleges that Defendant "copied Plaintiff's Kale

19   Krunch recipe and has been marketing kale-based snacks under the KALE KRUNCH trademark

20   online via the domain <kaleinyourkitchen.com>."  Id. ¶ 14.  According to Kaia, currently that

21   domain "resolves to a website that prominently displays the KALE KRUNCH trademark at the top

22   of the page."  Id.

23        Kaia asserts claims for federal trademark infringement under the Lanham Act, 15 U.S.C. §

24   1125 (Claim One), violation of the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15

25   U.S.C. § 1125(d) (Claim Two) and unfair competition under the California Business and

26   Professions Code, §§ 17200 et seq. (Claim Four).  Kaia also brings a claim seeking the

27   cancellation of Defendant's trademark registration for the KALE KRUNCH mark on the basis that

28   Defendant allegedly "misrepresented that no other person had the right to use the trademark"

United States District Court
Northern District of California

2

(Claim Three).

**B.    The Motion**

Defendant brings a motion seeking dismissal of this action on the basis of improper venue or transfer to the Central District of California, pursuant to Fed. R. Civ. P. 12(b)(3) (authorizing motion to dismiss for improper venue) and 28 U.S.C. § 1406(a) (providing that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").   Defendant T.J. Bellafiore's Motion to Dismiss for Lack of Venue, or, in the Alternative, to Transfer Venue ("Motion") at 1.  Defendant invokes 28 U.S.C. § 1391(b), governing venue in civil actions, arguing that subsection (1), providing for venue in "a judicial district in which a defendant resides, if all defendants are residents of the State in which the district is located," does not apply because Defendant does not reside in the Northern District of California but rather, in Los Angeles County, in the Central District of California.  *Id*. at 6-7.[1] Defendant further asserts that subsection (2) does not apply because "a substantial part of the events or omissions giving rise to the claim" did not occur in this district.  *Id*. at 7-9.

In support of the Motion, Defendant Bellafiore has filed a declaration stating that she has been does business in Los Angeles County as "Kale in Your Kitchen"  since 2011 and that at all relevant times she is and has been a permanent resident of Los Angeles.  Declaration of T.J. Bellafiore ("Bellafiore Decl."), ¶ 1, 3, 5.  According to Ms. Bellafiore, she sells her kale snacks to "Los Angeles and Palm Springs-based customers in person and through [her] website."  *Id*. ¶ 4. She states that when an order is placed through her website or directly, she mails or delivers the order in person and therefore, that she has "personal knowledge of the location of every customer who has purchased Kale snacks from her directly or through her website."  *Id*. ¶ 8.  According to Ms. Bellafiore, "[s]ince [she] began [her] business, the majority of [her] sales of Kale Snacks have been in person, or over the phone, to Los Angeles and Palm Springs-based clientele that [she has]

[1] On page 6 of the Motion, Defendant states that the action should be transferred to the Southern District of California.  This is clearly a clerical error as Defendant consistently refers to the Central District of California as the proper venue in the remainder of the Motion.

United States District Court
Northern District of California

1    developed" and that she has "never marketed any Kale Snacks to customers in Northern

2    California" and has not "ever sold Kale Snacks directly to customers living in California or the

3    San Francisco area." *Id*. ¶¶ 8-9. She further states as follows:

4        [S]ince I began my business, a much smaller portion of my sales of
         Kale Snacks have been made through my website, to my Los
5        Angeles-based clientele. I have never sold Kale Snacks through my
         website to any customers located in Northern California or the San
6        Francisco area. I have also never targeted or advertised my website,
         to any customers located in Northern California or the San Francisco
7        area.

8    *Id*. ¶ 11. Finally, Ms. Bellafiore states that she is the registered owner of the trademark KALE

9    KRUNCH, USPTO Registration No. 4422321 and the domain name <kaleinyour kitchen.com>,

10   which she uses "to display the [KALE KRUNCH] mark and offer Kale Snacks for sale." *Id*. ¶¶ 6-

11   7.

12        In its Opposition brief, Kaia argues that venue in this district is proper because: "(1)

13   substantial events giving rise to this action occurred in the Northern District, and (2) consumer

14   confusion, due to Defendant's infringing acts, is likely to occur in this District." Opposition at 1.

15   Kaia's argument is based on the fact that Kaia is located in this district and therefore, the injury

16   resulting from Defendant's alleged conduct will occur here. Opposition at 2. Kaia also offers a

17   declaration by its CEO, Nicholas Kelley, stating that Kaia is located in Oakland, California and

18   that it sells kale snacks under the Kale Krunch trademark that are sold directly to consumers via its

19   website and "through numerous third-party retailers." Declaration of Nicholas Kelley in Support

20   of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Kelley Decl."), ¶¶ 2-3. Kelley

21   further states that "Kale Krunch is currently available for purchase in at least forty (40) Whole

22   Foods Markets and more than forty (40) independent health food stores in Northern California."

23   *Id*. ¶ 4. According to Kelley, "[r]etail sales for Kale Krunch in Whole Foods Markets in Northern

24   California since 2011, are $4,445,670." *Id*. ¶ 5.

25        Kaia argues that in tort cases, a substantial part of the events upon which the claim is based

26   occur where the harm is felt by the plaintiff and therefore, venue is proper in the Northern District.

27   Opposition at 5 (citing *Twitter v. Skootle Corp*., 2012 WL 237486 at *6 (N.D. Cal. June 22,

28   2012)). Kaia also asserts that Defendant *knew* that any harm would be suffered in this district

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   because she purchased Plaintiff's product in 2008.  *Id*. at 6.  Moreover,  Kaia argues, Defendant's

2   "bare assertion that she is located in the Central District and supposedly does not do business in

3   this District is a far cry from the 'strong showing' that could upset Plaintiff's choice of forum."

4   *Id*. (citing *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986);

5   *Natural Wellness Centers of Am., Inc. v. J.R. Andorin, Inc*., 2012 WL 216578, at *10 (N.D. Cal.

6   Jan. 24, 2012);  *Warfield v. Gardner*, 346 F. Supp.2d 1033, 1044 (D. Ariz. 2004)).

7          Kaia also argues that venue is proper in the Northern District because consumer confusion

8   is likely to occur in this District.  *Id*. at 6-8.  Kaia cites the rule that "[i]n a trademark infringement

9   action, the actionable wrong takes place both where the infringing labels are affixed to the goods

10   and where confusion of purchasers is likely to occur."  *Id*. at 7 (quoting *Ansel Adams Publishing*

11   *Rights Trust v. PRS Media Partners, L.L.C.*, 2010 WL 4974114 (N.D. Cal. Dec. 1, 2010) and

12   citing *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599, at *4 n.2 (N.D.

13   Cal. March 23, 2005)).  According to Kaia, there can be consumer confusion in this district merely

14   because Defendant's products are advertised and made available here, even if Defendant has made

15   no actual sales in the District.  *Id*. at 7.  Kaia contends consumer confusion is likely in this district

16   because consumers in the Northern District can access Defendant's website.  *Id*.; *see also*

17   Declaration of Marie Richmond in Support of Plaintiff's Opposition to Defendant's Motion to

18   Dismiss ("Richmond Decl."), ¶ 5.

19          Finally, Kaia asserts that in determining whether a transfer is appropriate, the court should

20   also consider: 1) the plaintiff's choice of forum; 2) the convenience of the witnesses and parties; 3)

21   familiarity of the forum with applicable law; 4) ease of access to evidence and 5) relative court

22   congestion.  *Id*. at 8 (citing *Ansel Adams*, 2010 WL4974114, at *2).  According to Plaintiff, a

23   defendant seeking transfer must make a strong showing of inconvenience to warrant upsetting the

24   plaintiff's choice of forum and Defendant has not made such a showing here.  *Id*. at 8-9.[2]

25          In her Reply, Defendant argues that Kaia has relied upon the minority view of where "a

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [2] Kaia does not dispute that Defendant resides in the Central District of California and therefore,
28   that venue is not proper under 28 U.S.C. § 1391(b)(1).   Nor does Kaia contend 28 U.S.C. §
     1391(b)(3) applies.

1    substantial part of the events or omissions giving rise to the claim occurred" when it looks to the

2    place where the harm is felt by the plaintiff.  Defendant T.J. Bellafiore's Reply to Plaintiff Kaia

3    Foods, Incs.'s Opposition to Defendant's Motion to Dismiss for Lack of Venue or, in the

4    Alternative, to Transfer Venue ("Reply") at 2.   The proper test, Defendant asserts, looks to the

5    place "where the infringing labels are affixed to the goods and confusion of purchasers is likely to

6    occur."  *Id*.  Defendant acknowledges that Plaintiff also invokes that test, but argues that neither

7    *Ansel Adams* nor *Sutter Home Winery* support Plaintiff's assertion that there is a likelihood of

8    confusion in the Northern District of California under the facts of this case.  *Id*. at 3.   Rather, in

9    both of those cases, Defendant argues, the courts found a likelihood of confusion in the district not

10   just because the defendants operated websites that could be accessed from the district but also

11   because the defendants engaged in advertising that was directed at consumers in the district.  *Id*.

12   That is not the case here, Defendant asserts, where Defendant did not engage in any advertising

13   aimed at the Northern District.  *Id*. at 3-4.  Further, although consumers in this district can access

14   Defendant's website, even the website is not directed to consumers in this district, Defendant

15   contends, because the website has never advertised that Defendant's kale snacks are for sale in San

16   Francisco or the Northern District.  *Id*. at 4.

17        Defendant also rejects Plaintiff's argument that Defendant must make a strong showing

18   that the Northern District is less convenient for the parties than the Central District to warrant

19   transfer.  *Id*. at 4-5.  Defendant argues that this standard applies to transfers requested under 28

20   U.S.C. § 1404(a), not to transfers like the one requested here, under § 1406(a).  *Id*.  Similarly,

21   Defendant argues, the rule cited by Kaia that a plaintiff's choice of forum generally should not be

22   disturbed applies to § 1404(a) transfers, not § 1406(a) transfers.  *Id*. at 5.

23   **III.    ANALYSIS**

24        **A.    Legal Standard**

25        A party may bring a motion to dismiss an action for improper venue pursuant to Federal

26   Rule of Civil Procedure 12(b)(3).  When venue is improper, the court "shall dismiss, or if it be in

27   the interest of justice, transfer such case to any district or division in which it could have been

28   brought."  28 U.S.C. § 1406(a).  Plaintiff bears the burden of showing that venue is proper.  *See*

1  *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir.1979) ("Plaintiff had

2  the burden of showing that venue was properly laid in the Northern District of California.").

3  When the plaintiff asserts multiple claims, it must establish that venue is proper as to each claim.

4  *Adobe Systems, Inc. v. Childers*, 2011 WL 566812, at *7 (N.D. Cal. Feb. 14, 2011) (citation

5  omitted).  However, where venue exists for the principal claim, federal courts will also adjudicate

6  closely related claims, even if there is no independent source of venue for the related claims.  *Id*.

7      On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), "the

8  pleadings need not be accepted as true, and the court may consider facts outside of the pleadings."

9  *Murphy v. Schneider National, Inc*., 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted).

10  Whether to permit discovery relating to venue is within the Court's discretion.  *Trusted Health*

11  *Products, Inc. v. Blue Cross Laboratories, Inc.*, 2014 WL 3586256, at *2 (E.D.Ky., July 21, 2014)

12  ("the scope of discovery concerning jurisdiction, venue and transfer is within the Court's

13  discretion") (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir.1991); *Oppenheimer*

14  *Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *Kron Medical Corp. v. Groth*, 119 F.R.D.

15  636, 638 (M.D.N.C.1988)).  Dismissal, rather than transfer, may be appropriate where the transfer

16  would be futile because the case would be dismissed even after transfer.  *See Altin Havayolu*

17  *Tasamaciligi Turizm Ve Tic v. Sinnarajah*, 2008 WL 691851, *5 (N.D.Cal. 2008) (*citing King v.*

18  *Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992)).

19      **B.    Whether Venue is Proper as to Plaintiff's Trademark Infringement Claim**

20      Venue as to a trademark claim is evaluated under the general venue statute, 28 U.S.C. §

21  1391(b).  *Adobe Systems*, 2011 WL 566812, at *7.   Under 28 U.S.C. § 1391(b)(2), upon which

22  Kaia relies to establish venue in this action, venue is proper in "a judicial district in which a

23  substantial part of the events or omissions give rise to the claim occurred . . . ."   In a trademark

24  infringement action, a substantial part of the events occur both where the labels are affixed and

25  where confusion of purchasers is likely to occur.  *Sutter Home Winery, Inc. v. Madrona*

26  *Vineyards, L.P.*,  2005 WL 701599, at *4 n. 2  (N.D. Cal. March 23, 2005) (citation omitted).

27      Confusion of customers occurs where the passing off occurs, that is, "where the deceived

28  customer buys the defendant's product in the belief that he is buying the plaintiffs."  *Sykes*

7

United States District Court
Northern District of California

1    *Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849, 860 n. 8 (C.D. Cal.,1985).  Thus, in *Sutter Home*, the

2    court found that venue was proper in the Northern District of California where the defendant,

3    whose business was located outside the district, operated a website advertising its products that

4    was accessible in the Northern District and made "relatively modest sales" in this district.  2005

5    WL 701599, at *4 n. 2;  *see also Adobe Systems*, 2011 WL 566812, at *8 n. 5 (citing *Sutter Home*

6    for the proposition that "a website coupled with even a small number of sales in the district can

7    support a finding that venue is proper").   Further, courts have held that confusion is *likely* to occur

8    based on advertising activities that are aimed at the district, even if there is no evidence that actual

9    sales of the allegedly infringing product have occurred.  *Adobe Systems*, 2011 WL 566812, at *8

10   (holding that venue was proper, even though there was no evidence of sales in the district, because

11   defendant had "aimed its activities at" the district by entering into numerous contracts with

12   companies in the district and advertised prominently on its website its "close relationship" with

13   these local companies);  *see also Radical Products, Inc. v. Sundays* Distributing, 821 F.Supp. 648,

14   650 (W.D.Wash.,1992) (holding that venue was proper, even though there were no sales in the

15   district because defendant had mailed 650 brochures advertising its products to addresses in the

16   district).

17          On the other hand, courts have generally held that the mere fact that a website that displays

18   the allegedly infringing mark can be accessed in the district is not sufficient for venue in the

19   absence of sales in the district or other activities aimed at the district.  *See Shari's Berries*

20   *International, Inc. v. Mansonhing*, 2006 2382263, at *2 (E.D. Cal. Aug. 17, 2006) (holding that

21   where mark was displayed on website that provided email address and toll-free number for placing

22   orders but there were no other events or omissions in the district, venue was improper);

23   *Francesca's Collections, Inc. v. Medina*, 2011 WL 3925062 (S.D. Tex. Sept. 7, 2011) (holding

24   that where defendant advertised allegedly infringing mark on an interactive website that was

25   accessible to internet users in the district but no orders had been shipped to the district, venue was

26   improper); *The Glazier Group, Inc. v. Mandalay Corp*., 2007  WL, at *13 (S.D. Tex. July 11,

27   2007) (citing *Shari's Berries* and holding that website was not enough to establish venue where

28   website was equipped to take orders of product with allegedly infringing mark but only two orders

8

1  had been placed and neither had been filled or shipped to the district); *Dakota Beef, L.L.C. v.*

2  *Pigors*, 445 F. Supp. 2d 917, 920-921 (N.D. Ill. 2006) (holding that access to interactive website

3  by users in the district was not sufficient to make venue proper where defendant had never aimed

4  activities at district or made sales of allegedly infringing product in the district).

5      In *Jamba Juice Company v. Jamba Group, Inc*., 2002 WL 1034040, at *2 (N.D. Cal. May

6  15, 2002), Judge Walker offered the following explanation for rejecting venue on a trademark

7  infringement claim based on accessibility to the defendant's website coupled with harm to the

8  plaintiff in the district:

> 9   The fact that defendant operates a website, which may be accessed
>     anywhere in the United States, and that plaintiff's principal place of
> 10  business is in the Northern District does not, however, establish that
>     venue is proper in the Northern District. To accept plaintiff's
> 11  contention would be to adopt a rule that would subject any
>     corporation with a website to venue in the district in which plaintiff
> 12  does business. Such a rule, however, would dramatically alter the
>     present venue statute.

13  *Id*. Citing the Eighth Circuit's decision in *Woodke v. Dahm*, 70 F3d 983 (8th Cir. 1995), Judge

14  Walker found that such a result would be contrary to Congressional intent in enacting the venue

15  statute, which focuses on the activities of the defendant. *Id*. He went on to note that in the context

16  of personal jurisdiction, to which courts look for guidance as to the venue inquiry, "the Ninth

17  Circuit has made it clear in a series of recent decisions that in order to establish personal

18  jurisdiction, a plaintiff must show 'something more' than the operation of a general access

19  website, specifically, 'conduct directly targeting the forum.'" *Id*. (quoting *Rio Properties, Inc. v.*

20  *Rio Int'l Interlink*, 284 F3d 1007, 1020 (9th Cir. 2002), discussing *Cybersell, Inc v. Cybersell, Inc*,

21  130 F3d 414, 418-20 (9th Cir1997)). Judge Walker continued, "[t]his 'something more' occurs,

22  for example, when a company places print and radio advertisements in the forum state." *Id*.

23  (citing *Rio Properties*, 248 F.3d at 1020-22). He went on to hold that venue was improper where

24  the defendant's activities were conducted entirely outside of the district and the only connection to

25  the district was that defendant operated a website that was accessible in the district.

26      In *Dakota Beef*, the court reached a similar result, looking to the law of personal

27  jurisdiction for guidance. 445 F. Supp. 2d at 920-921. Noting that access to a passive website is

28  not sufficient to give rise to minimum contacts for the purposes of personal jurisdiction, the court

United States District Court
Northern District of California

9

went on to address whether the contacts in that case were adequate for the purposes of venue.  *Id.* at 920.  The court held that they were not, reasoning as follows:

> Here, the infringement plaintiff points to in its complaint allegedly occurred on the websites www.mynaturalbeef.com and www.localharvest.com. Jackson-Pridie states in an affidavit attached to her motion to dismiss that she assisted Pigors in marketing his products. She states that she never sent any solicitations on Pigors's behalf into Illinois or any other state, and did not travel to Illinois to sell beef or meat products. Further, she states that the servers on which the allegedly infringing materials were placed are not located in Illinois. While one of these two websites is equipped to take orders from customers, only two orders were ever received from the website, and no orders were actually fulfilled. No orders were ever shipped to Illinois.  This is not enough to constitute a "substantial" part of the infringement alleged, or to suggest that defendants had any meaningful contact with Illinois.

*Id.* at 920-921.

Plaintiff in this case, however, points to *Ansel Adams Publishing Rights Trust v. PBS Media Partners, LLC*, 2010 WL 4974114 (N.D. Cal. Dec. 1, 2010) in support of its position that access by internet users in this district to a generally accessible website that displays the allegedly infringing mark is sufficient to establish a likelihood of confusion within the district for the purposes of venue.  In *Ansel Adams*, the court held that there was a likelihood of confusion in the district because the defendant maintained a website through which internet users in the district could order the defendant's product.  2010 WL 4974114, at *2.  In support of this conclusion, the court cited *Sutter Home,* highlighting the fact that the defendant in that case advertised its product on its website and that although the product could not be ordered directly through the website, customers could download an order form and mail or fax an order to the company.  *Id.*  The court did not address the fact that in *Sutter Home,* the defendant also made sales of its product, albeit modest sales, in the district.

To the extent the court in *Ansel Adams* extended the holding of *Sutter Home* to a situation in which the only basis for finding a likelihood of confusion in the district is the operation of an interactive website that is accessible in the district, the undersigned declines to follow *Ansel Adams*.  First, the court in *Ansel Adams* did not address whether its holding was consistent with Congress's intent in enacting the general venue statute.  For the reasons stated in *Jamba Juice,* the

10

1    undersigned finds that it is not.  Second, the court in *Ansel Adams* did not look to the law of

2    personal jurisdiction for guidance or explain why it implicitly rejected the conclusions of the

3    courts that have considered the law of personal jurisdiction, including *Jamba Juice* and *Dakota*

4    *Beef*, and found on that basis that venue is improper where it is based only on access to an

5    interactive website that is generally accessible to internet users.[3]

6              Aside from the website operated by Defendant, none of the acts or omissions upon which

7    Plaintiff's trademark infringement claim is based occurred in the Northern District of California.

8    Although internet users in this district can access Defendant's website, there is no evidence that

9    any orders have ever been placed by purchasers in this district.  To the contrary, the only evidence

10   is that no orders have been placed with Defendant from this district – whether via the website or

11   through any other means.  Defendant has also offered uncontroverted evidence that she has never

12   aimed her marketing activities toward this district in any manner.  Under these facts, and for the

13   reasons discussed above, the Court concludes that venue is improper in this district.

14             The Court also rejects Plaintiff's assertion that venue in the Northern District is proper

15   because in tort cases, venue is proper where the harm is felt by the plaintiff.  As discussed above,

16   that is not the rule as to claims for trademark infringement.  Further, the case cited by Plaintiff in

17   support of this proposition, *Twitter, Inc.  v. Skootle Corp.*, does not involve a trademark

18   infringement claim but rather, a contract claim in which the defendant had entered a terms of

19   service agreement that included a forum selection clause. 2012 WL 2375486, at *6 (June 22,

20   2012).  Similarly, Plaintiff's reliance on cases involving requests for convenience transfers under

21   28 U.S.C. § 1404(a) is misplaced.  *See* Opposition at 5-6 (citing *Natural Wellness Centers of*

22   *America, Inc. v. J.R. Andorin, Inc.*, 2012 WL 216578, at *10 (N.D. Cal. Jan. 24, 2012) (denying

23

24   ───────────────────
     [3] At oral argument, Plaintiff's counsel asserted, for the first time, that the undersigned adopted the
25   holding of *Ansel Adams* in a prior decision, *iYogi Holding Pvt. Ltd. v. Secure Remote Support,*
     *Inc.*, Case No. C-11-0592 CW (JCS), 2011 WL 6291793 (N.D.Cal., Oct. 25, 2011), *Report and*
26   *Recommendation, adopted* 2011 WL 6260364 (N.D.Cal. Dec 15, 2011). Counsel is incorrect.  In
     *Iyogi*, the undersigned found that venue was proper not because the defendant's website could be
27   accessed by users in this district but on the basis of allegations that the defendant had allegedly
     placed "shill reviews on many consumer websites that are based out of Northern California." *Id.*
28   at *11. Thus, *Iyogi* is not on point.  Further, the undersigned did not cite or discuss the *Ansel*
     *Adams* decision in its opinion.

1    request for a transfer of venue under 28 U.S.C. § 1404(a)); *Decker Coal Co. v. Commonwealth*

2    *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (same);  *Warfield v. Gardner*, 346 F. Supp. 2d

3    1033, 1044 (D. Ariz. 2004) (same)).  Defendant does not seek a transfer under 28 U.S.C. §

4    1404(a) based on convenience;  rather, Defendant asserts the case should be dismissed or

5    transferred because venue is improper under § 1406(a).

6            Finally, the Court denies Plaintiff's request to conduct discovery on venue.  Although

7    Defendant offered a declaration in support of the Motion stating that no sales had been made of

8    the allegedly infringing product in this district and no advertising efforts had been aimed at this

9    district, Kaia did not offer any evidence to the contrary in support of its Opposition brief.  Nor did

10   Kaia suggest in its Opposition that it needed to conduct discovery on venue in order to adequately

11   respond to Defendant's evidence.  Rather, Kaia relied entirely upon the theory that there is a

12   likelihood of confusion in the district because Defendant's website is accessible here.  It was only

13   when Kaia's counsel became aware, at oral argument, that the Court did not agree with its theory

14   that it asked for the opportunity to conduct discovery on venue so that it could "beef up" its

15   allegations.  Kaia's request is untimely; moreover, Kaia has offered nothing in its briefs or at oral

16   argument that leads the Court to believe that venue discovery will change the result on this issue.

17   Accordingly, the Court declines to exercise its discretion to permit Kaia to conduct discovery on

18   venue. *See Trusted Health Products, Inc. v. Blue Cross Laboratories, Inc.*, 2014 WL 3586256, at

19   *2 (E.D. Ky., July 21, 2014).

20           As the Court finds that venue in the Northern District of California is improper as to

21   Plaintiff's trademark infringement claim – and Plaintiff has made no attempt to establish that

22   venue in this district is proper as to any of its other claims – the only remaining question is

23   whether the Court should dismiss or transfer the action.   Based on the evidence in the record, as

24   well as the stipulation of the parties, the Court finds that venue in the Central District of California

25   is proper as to all of Plaintiff's claims.   Therefore, it is in the interest of justice to transfer the

26   action to that district.

27   **IV.    CONCLUSION**

28           The Motion is GRANTED on the basis that venue is improper in this district. The action

United States District Court
Northern District of California

12

1 | shall be transferred to the Central District of California.

2 |     **IT IS SO ORDERED.**

3 |

4 | Dated:  October 3, 2014

5 |

6 | JOSEPH C. SPERO
    United States Magistrate Judge

United States District Court
Northern District of California